ZAGER, Justice
(concurring specially).
I concur in the majority opinion. I write separately to voice my disagreement with what I see as the majority minimizing the violation of our rules. In my opinion, a judge placing a marriage tab on a private law practice website is clearly an “abuse [of] the prestige of judicial office to advance the personal or economic interests of the judge.” Iowa Code of Judicial Conduct R. 51:1.3. The only reason that a private attorney would have such a tab on his or her website is because he or . she is a judicial officer who can perform marriage ceremonies. In other words, the ability to perform marriage ceremonies is a prestige of judicial office.
Clearly, all judicial officers are entitled to perform marriage ceremonies with certain restrictions. See Iowa Code § 595.12(1), However, the advertising on Magistrate Martinek’s website went far beyond what I believe should be allowed under our rules. A marriage tab on a judicial officer’s private law practice website smacks of the unseemly creation of a cottage industry. As acknowledged by Martinek, he created the marriage tab on his website both to address the increased demand for marriage services after our decision in Varnum v. Brien, 763 N.W.2d 862 (Iowa 2009) and to save himself time. While I do not dispute that performing marriage ceremonies is an important public service, it is not the primary duty of our judicial officers. Further, because an exchange of money occurs when a judicial officer performs a wedding outside regular business hours, we should expect our judicial officers not to exploit their ability to provide such services for their own personal and economic interests.
Unlike the majority, I do not accept the idea the ethics violation Martinek commit *94 ted is somehow diminished because Marti-nek was responding to increased demand for his services and thought advertising in this way would save him time on the phone. The' majority does not disagree with the Commission’s conclusion that the advertising on Martinek’s website was intended to “advance [his] personal and economic’interests.” See Iowa Code of Judicial Conduct R. 51:1.3. Yet the majority somehow -concludes Martinek’s advertising the judicial services he performed to advance his own interests did not amount to an “abuse [of] the prestige of judicial office.” See id. I disagree.
Instead, I would adopt the rule endorsed by the Colorado Judicial Ethics Advisory Board, which advised Colorado judicial officers that “a judge may not send fliers to wedding planners or otherwise advertise [his or] her availability to perform weddings, such as through a personal website or yellow pages advertisement.” Colo. Judicial Ethics Advisory Bd., Op. 2007-05, 2007 WL 7603068, at *1 (2007). This is a commonsense, bright-line rule all judicial officers should be expected to follow. Here, as in many jurisdictions today, ’a judicial officer may have his. or her name and contact information displayed on a court’s official website or posted at the courthouse. See id. at *2. The-judicial officers are also generally free to make whatever arrangements are convenient for them and for members of the public who request their services. See Iowa Code § 595.12(1). Unlike the majority, I perceive judicial officers advertising services they are able to provide due to the prestige of judicial office to be a serious problem — even if the advertising is not associated with a private law practice. Do we really want our judicial officers advertising for wedding services on the Internet or through the yellow pages? I think such advertising amounts to a violation of our canons and rules — even when it is not connected to a private law practice. For these reasons, I specially concur.